IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Kris Kerr,            Case No. 3:07 CV 2990

        Petitioner,            MEMORANDUM OPINION
                            AND ORDER

    -vs-
                            JUDGE JACK ZOUHARY

Clifford Smith,

        Respondent.

## I. INTRODUCTION

*Pro se* Petitioner Kris Kerr, a prisoner in state custody, filed a Petition for a Writ of Habeas Corpus (Doc. No. 1). This Court has jurisdiction under 28 U.S.C. § 2254(a) ("[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."). Petitioner alleges his detention violates the Fourth, Sixth, and Fourteenth Amendments of the U.S. Constitution.

The case was referred to United States Magistrate Judge Vernelis Armstrong for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). The Magistrate Judge recommended the Court deny the Petition (Doc. No. 15).

Petitioner objects (Doc. No. 16) to the Magistrate's denial. In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981) and 28 U.S.C. § 636(b)(1)(B) & (C), this Court has made a *de novo* determination of the Magistrate's findings and adopts the denial of the Petition.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner does not object to the factual background (Doc. No. 15, pp. 2-3) or procedural background (Doc. No. 15, pp. 4-6) described in the Magistrate's Report and Recommendation. The Court adopts them in their entirety.

## III.   DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, requires a federal habeas court to limit its analysis to the law as it was "clearly established" by the U.S. Supreme Court at the time of the state court decision.[1]

The Supreme Court has provided direction on the application of this standard in *Williams v. Taylor*, 529 U.S. 362 (2000). Under the "contrary to" prong, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Id.* at 405-06.

The "unreasonable application" prong of AEDPA permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle" from the Supreme Court's decisions, "but unreasonably applies that principle to the facts" of petitioner's case. *Williams*, 529 U.S. at 413. This "unreasonable application" requires the state court decision to be more than

---

[1] The relevant section of AEDPA provides:
  (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2

incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (*citing Williams*, 529 U.S. at 407). Rather, the state court's application must have been "objectively unreasonable." *Williams*, 529 U.S. at 409.

Petitioner objects to the Magistrate's conclusions with respect to his Fourth Amendment claims, his Sixth Amendment claims of ineffective assistance of counsel, and his claim that he was incorrectly sentenced under *State v. Foster*, 109 Ohio St. 3d 1 (2006). Each objection is examined below.

### A. Fourth Amendment Claims

Petitioner claims his Fourth Amendment rights were violated because the car he was driving was illegally searched. The Magistrate concluded this Fourth Amendment claim is not subject to habeas review because the state afforded Petitioner sound procedural avenues to challenge the search in its courts. Petitioner objects to this conclusion, arguing simply that the issue is appropriate for review because a constitutional right is implicated (Doc. No. 16, p. 2). However, under the law, such a bare and conclusory assertion of a Fourth Amendment violation is insufficient to warrant habeas review.

The Fourth Amendment guarantees a person the right to be free from unreasonable search and seizures. U.S. CONST. amend IV. The exclusionary rule is a judicially created means of effectuating the rights secured by the Fourth Amendment, and the primary justification for the exclusionary rule is deterrence. *Stone v. Powell*, 428 U.S. 465, 482-86 (1976). In *Stone*, the Supreme Court held that the burden placed on the justice system by allowing a habeas petitioner to litigate Fourth Amendment claims in federal court where the petitioner had a full and fair opportunity to litigate in state courts would outweigh any deterrence of Fourth Amendment violations. *Id.*

3

Thus, a Fourth Amendment habeas claim must include an allegation of procedural dysfunction at some level. "A habeas petitioner may not seek habeas relief on a claim of illegal arrest if he had a full and fair opportunity to raise the claim in state court and presentation of the claim was not thwarted by any failure of the state's corrective processes." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). An assessment of the adequacy of the state's processes involves a two-step inquiry. First, the Court "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim." *Id.* Second, the Court asks "whether presentation of [Petitioner's] claim was in fact frustrated by a failure of that mechanism." *Id.*

The state has an adequate procedural mechanism in place for defendants to challenge the legality of searches and seizures. In fact, Petitioner availed himself of it. Petitioner filed a pretrial motion to suppress evidence obtained during the inventory search (Doc. No. 11, Ex. 3). The parties briefed the issue, and the trial court held oral argument on the motion (Doc. No. 11-4). The trial court ultimately denied Petitioner's motion to suppress (Doc. No. 11, Ex. 5). Petitioner appealed the trial court's ruling, and the state court of appeals affirmed the trial court's decision. *State v. Kerr*, No. WD-05-080, 2006 WL 3334536 (Nov. 17, 2006). The appellate court concluded the search was properly conducted during an inventory search. *Id.* There was no failure of the state court's procedural mechanism.

Therefore, the Court finds Petitioner's objection with respect to his Fourth Amendment claim is not well taken.

4

**B.  Sixth Amendment Ineffective Assistance of Counsel Claims**

Petitioner claims he was denied effective assistance of counsel during trial court proceedings. Petitioner appears to argue trial counsel failed him in the following ways: (1) failing to raise and argue legal issues in his motion to suppress physical evidence; (2) failing to file a motion to suppress inculpatory statements; and (3) providing erroneous legal advice which induced his plea of no contest.

For a claim of ineffective assistance of counsel, Petitioner must ordinarily prove two components: (1) deficiency of counsel's performance and (2) resulting prejudice, such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

1.  Motion to Suppress

Petitioner cites a number of inadequacies with respect to trial counsel's filing of the motion to suppress and the arguments made or not made in connection therewith. The facts relevant to this objection are as follows:

> [Petitioner] pulled into a BP gas station and parked in a parking space. After approximately 20 minutes, Petitioner had not exited the vehicle. A friend of the station attendant went out to Petitioner's vehicle, noticed him slumped over the steering wheel, and tapped on the glass. When Petitioner could not be roused, the attendant called Northwood police.
>
> A police cruiser responded, parking behind Petitioner's vehicle. Officer Ryan Graves testified that Petitioner appeared to be unconscious. Graves also tapped on the glass several times, first with his hand, and then using his flashlight. Petitioner finally opened his eyes, but was unable to roll down the window at the officer's request. Graves then opened the car door and asked Petitioner if he was "okay." Petitioner gave Graves his identification information which was relayed to the dispatcher. Petitioner also said that he had borrowed the car from a friend.

5

>       A second patrolman who had arrived at the scene ran the vehicle's license plate to determine ownership. Meanwhile, thinking Petitioner had a medical problem, Graves continued talking to Petitioner who kept falling asleep. Although the vehicle did not come back as stolen, an active Williams County arrest warrant for Petitioner was discovered. At that point, Petitioner was taken into custody, handcuffed, and placed in the back seat of Graves' cruiser. Graves stated that, since the vehicle did not belong to Petitioner, and no other driver was present to take possession of the car, it was Northwood police policy to tow the vehicle for safekeeping.

*Kerr*, No. 2006 WL 3334536, at *1.

Petitioner argues his trial counsel was ineffective for not filing "a motion to suppress the request for identification," arguing the request for identification resulted in an illegal detainment under the Fourth Amendment and, consequently, an illegal search (Doc. No. 16, pp. 2-3). Specifically, Petitioner objects to the Magistrate's conclusion that the responding officer had probable cause to investigate and ask Petitioner questions because circumstances led the officer to believe Petitioner may have been suffering a medical emergency. Rather, Petitioner argues that "the record clearly shows that the officer never acted on this alleged feeling 'something was medically wrong,' but instead awoke the Petitioner . . . and then doggedly pursued nothing more than a criminal investigation" (Doc. No. 16, pp. 2-3). However, Officer Graves' subjective motivation in asking for Petitioner's identification is irrelevant. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996). Whether Petitioner's health and safety was his true concern is of no import.

To determine whether Officer Graves' actions were justified, the Court must identify the type of encounter that occurred between Petitioner and Officer Graves when he asked Petitioner for his name. "Police and citizens may have three types of permissible encounters: (1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of

6

criminal activity; and (3) the arrest, valid only if supported by probable cause." *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008).

Here, the facts fit the first type of encounter. None of the facts suggest Petitioner was "detained" until after it became apparent there was a warrant for his arrest. Asking questions is not improper under the Fourth (or Fifth[2]) Amendment because "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage -- as long as the police do not convey a message that compliance with their request is required." *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991); *see also Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 185 (2004) ("In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment."). Here, Officer Graves knocked on the car window and asked Petitioner for his name, which he willingly provided. There is no indication Petitioner provided his identity under the threat of police force or authority.

Even if Petitioner could establish he did not volunteer his name to Officer Graves, under the police community caretaking function enunciated by the Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433 (1973), officers are "entitled to enter [a] car without a warrant in order to protect themselves and the public." *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998). Petitioner's unresponsive nature gave Officer Graves the right to open the car door and inquire of Petitioner's identity.

---

[2] Petitioner does not expressly make a Fifth Amendment claim but hints at such an argument in his Objection. The Court finds Officer Graves' question did not constitute an "interrogation" under the Fifth Amendment such that he was required to be read his *Miranda* rights. *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 190 (2004).

Once Petitioner gave his name to Officer Graves, a simple computer check exposed the fact there was an outstanding warrant against Petitioner. Once the warrant came to light, Officer Graves had probable cause -- and even more, a sworn legal duty -- to arrest Petitioner. Thus, it is clear Petitioner cannot meet his *Strickland* obligation to establish there is a reasonable probability the outcome would have differed had trial counsel challenged Officer Graves for asking Kerr his name.

2. Use of Inculpatory Statements

Petitioner also argues trial counsel was ineffective for failing to file a motion to suppress his confession. Petitioner claims he was under the influence of drugs when he made the statements, and therefore use of his confession violates the Fourteenth Amendment. Petitioner objects to the Magistrate's conclusion it was unlikely the trial court would have granted such a motion. In his Objection, Petitioner argues "there was, in fact, a reasonable doubt that his confession may have been ruled inadmissable [*sic*] due to the Petitioner's obvious impared [*sic*] state of mind, had the trial counsel bothered to file a motion to suppress" (Doc. No. 16, p. 4).

The Court agrees with the Magistrate's conclusion that filing such a motion would not have affected the underlying proceedings. In order to find a statement invalid under the Due Process Clause of the Fourteenth Amendment, Petitioner must demonstrate an element of police coercion. *Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005). "Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for the purposes of due process; some element of police coercion is always necessary." *Id.*

8

Petitioner does not claim the police coerced him into making a statement. Therefore, his statement did not violate the Due Process Clause, and filing an exclusionary motion would not have affected the outcome.

### 3. Inducement to Enter No Contest Plea

Petitioner entered a plea of no contest to two charges of drug manufacturing and possession. Petitioner argues he relied on defective advice from trial counsel when deciding to enter his no contest plea.

After a review of the Record, the Magistrate determined "Petitioner was not grossly misinformed by his counsel. Counsel explained that entering a conditional plea of no contest was an attempt to obtain immediate appellate review of the denial of the motion to suppress" (Doc. No. 15, p. 13). The Magistrate found that entering a plea of no contest was clearly part of a "legitimate trial strategy." The Court agrees with the Magistrate's conclusion that Petitioner's plea was knowingly and voluntarily entered.

Petitioner objects to the Magistrate's conclusion, arguing the Record "clearly shows that the implementation of counsel's legitimate trail [*sic*] strategy was, in fact, impossible" because "the very issue [counsel] intended to appeal could not be appealed without the benefits of a trial" (Doc. No. 16, p. 5). The Court fails to follow Petitioner's argument. According to the Record, Petitioner did in fact appeal the trial court's ruling on the motion to suppress. The appellate court affirmed the trial court's decision. *Kerr*, 2006 WL 3334536.

In his Objection, Petitioner states he "did expect . . . he would have been able to appeal the 'chain of custody' issue as the trial counsel advised him he could. Obviously, this never happened" (Doc. No. 16, p. 5). This is perplexing when considered with another statement in the Objection in

9

which Petitioner objects to the Magistrate conducting an ineffective assistance analysis with respect to trial counsel's failure to raise a chain of custody issue. "[E]ven a cursory review of the record would reveal that no such allegation or claim was ever made in the Petitioner's arguements [*sic*] that he was denied effective assistance of counsel. In fact, the Petitioner only refers to the 'chain of custody' issue in the context that trial counsel was unaware of the fact that any 'chain of custody' claims must be made at trial, as opposed to his attempt to argue the issue during the suppression hearing" (Doc. No. 16, p. 4). These statements, when read in conjunction with Petitioner's appellate brief (Doc. No. 11, Ex. 9), lead the Court to conclude that Petitioner is essentially arguing that trial counsel incorrectly told Petitioner he could challenge chain of custody on appeal,[3] and that Petitioner relied on this statement when choosing to enter his plea of no contest.

A defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). A plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). The two-part test set forth in *Strickland* also applies to guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To meet the prejudice prong in a plea context, Petitioner must show that but for trial counsel's errors, there is a reasonable probability he would not have pled no contest but, instead, would have insisted on going to trial. *Id.* at 59-60. Yet Petitioner does not allege that he would have insisted on going to trial. In fact, the transcript of the plea hearing mentions nothing of chain of custody preservation. At the hearing, trial counsel explained that entering a conditional plea of no contest was an attempt to obtain immediate appellate review of the denial of

---

[3] A chain of custody challenge cannot be appealed without the benefit of a trial in which the prosecution would attempt to establish chain of custody.

the motion to suppress (Doc. No. 11-5, p. 2). No mention was made of a chain of custody appeal; Petitioner agreed with his counsel's statements and entered his plea.

Petitioner has failed to establish the prejudice prong of *Strickland*. Thus, this third aspect of Petitioner's ineffective assistance of counsel claim is without merit.

### C. Sentencing Under Ohio Law

Petitioner argues the Court must vacate the sentence imposed by the trial court and order the trial court to resentence him in accordance with *State v. Foster*, 109 Ohio St. 3d 1 (2006). The Magistrate concluded this claim is not cognizable under federal habeas review.[4]

Petitioner was sentenced to a term of four years for the offense of illegal assembly or possession of chemicals for manufacture of drugs, in violation of R.C. § 2925.041, and eleven months for aggravated possession of drugs in violation of R.C. § 2925.11. The trial court ordered the two terms to run consecutively.

Petitioner argues that under the Ohio Supreme Court's decision in *Foster*, the trial court improperly imposed consecutive and more than minimum terms of incarceration. On direct appeal, the state appellate court thoroughly addressed the propriety of Petitioner's sentence in light of *Foster* and concluded Petitioner's sentence was valid under that ruling. *Kerr*, 2006 WL 3334536, at *6.

---

[4] Under *State v. Foster*, which was decided by the Ohio Supreme Court on February 27, 2006, cases "pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion." 109 Ohio St. 3d at 31. Thus, all cases pending before Ohio appellate courts on February 27, 2006 were required to be remanded to trial courts for resentencing. With serendipity at work, Petitioner filed his direct appeal on February 27, 2006, the date of the *Foster* decision. Upon a review of the Record, it does not appear that Petitioner's case was remanded for resentencing. However, the Court is satisfied with the appellate court's extensive review of Petitioner's sentence in light of *Foster*. Therefore, the Court believes any remand requirement of *Foster* has been mooted.

"Federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (internal citations omitted). Furthermore, "[w]ide discretion is accorded a state trial court's sentencing decision. Claims arising out of that decision are not generally cognizable upon federal habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law." *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).

Here, each sentence was within the statutory limit. A sentence of four years is within the statutory limits designated under R.C. § 2929.14(A)(3) for a conviction of illegal assembly or possession of chemicals for the manufacture of drugs, a third-degree felony. Eleven months is within the statutory limits designated by R.C. § 2929.14(A)(5) for conviction of aggravated possession of drugs, a fifth-degree felony.

In his Objection, Petitioner argues that his sentence exceeded the statutory limit because "the sentencing statutes in place at the time of sentencing were ruled to be unconstitutional in *State v. Foster*, [and therefore] the sentence received is wholly unauthorized by law" (Doc. No. 16, p. 6). This is simply not the case.

Petitioner's Objection misconstrues *Foster*. The *Foster* court struck down certain provisions of Ohio's sentencing guidelines that permitted sentencing enhancements based on judicial fact-finding. The *Foster* court severed the two unconstitutional enhancements -- R.C. §§ 2929.19(B)(2) and 2929.14(E)(4) -- related to consecutive sentences in Ohio's sentencing guidelines. 109 Ohio St. 3d at 29-30. The *Foster* court then held that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at 30.

Furthermore, the state appellate court's decision was issued after *Foster* was decided. The appellate court fully considered Petitioner's sentence in light of *Foster* and ultimately concluded it had no impact on Petitioner's sentence, finding that "the trial court did not specifically reference any of the statutes held to be unconstitutional by *Foster*." *Kerr*, 2006 WL 3334536, at *6.

He further argues in his Objection that "at the time Petitioner was sentenced, the statutory maximum the Petitioner could be sentenced to was one year" (Doc. No. 16, p. 6). However, Petitioner has offered no support whatsoever for this proposition.

Because Petitioner's sentence did not exceed the statutory maximum, which the state court of appeals affirmed in light of *State v. Foster*, this Court adopts the Magistrate's conclusion that Petitioner's claim arising from the state court's sentencing decision is not cognizable under habeas review.

## IV. CONCLUSION

After conducting a *de novo* review of the portions of the Report and Recommendation objected to by Petitioner, the Magistrate's Report and Recommendation is hereby adopted and affirmed, and Petitioner's claims are dismissed.

Petitioner has failed to show the existence of any set of facts upon which he could prevail. Accordingly, under 28 U.S.C. § 1915(a)(3), the Court certifies that an appeal of this action could not be taken in good faith.

IT IS SO ORDERED.

                                                           s/ *Jack Zouhary*
                                                           JACK ZOUHARY
                                                           U. S. DISTRICT JUDGE

                                                           January 12, 2009